UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

VOLTAGE PICTURES, LLC, )
)
    Plaintiff, )
)
v. )
) Case No. CV413-037
DOES 1-31 )
)
    Defendants. )

## ORDER

This copyright infringement case is "one of hundreds if not thousands of lawsuits involving the use of BitTorrent technology which have been filed throughout the nation." *Malibu Media, LLC v. Doe*, ___ F. Supp. 2d ___, 2013 WL 525352 at * 1 (M.D. Fla. Feb. 13, 2013). Voltage Pictures, LLC, successor to Maxcon Productions, Inc., docs. 1 & 6,[1] seeks injunctive relief plus damages against the defendants, unidentified infringers of Voltage's film, *Maximum Conviction*. Doc. 1 at 16. Sued as "Does," Voltage alleges that they are using a process known as "BitTorrent downloading" to violate its copyright. *Id.* It moves for

---

[1] The Court granted Voltage's motion to substitute itself as the plaintiff, doc. 6, so the caption has been amended accordingly. All subsequent filings shall conform.

expedited discovery to learn the Does' names while keeping them joined in this lawsuit.[2] Doc. 4.

## I. BACKGROUND

> BitTorrent is a modern file sharing method used for distributing data via the Internet. Unlike traditional file transfer protocols which involve a central server and the transfer of whole files between users, the BitTorrent protocol is a decentralized method of distributing data. The BitTorrent protocol breaks an individual file into small pieces that individual users then distribute among themselves. This allows for faster file transfers than traditional file-sharing programs that require users to transfer whole files from a central server among themselves.

*Bubble Gum Productions, LLC v. Does 1-80*, 2012 WL 2953309 at * 1 (S.D.Fla. Jul. 19, 2012); *see also Columbia Pictures Industries, Inc. v. Fung*, ___ F.3d ___, 2013 WL 117415 at * 1-6 (9th Cir. Mar. 21, 2013 (extended technical explanation of BitTorrent); *Patrick Collins, Inc. v. Does 1-30*, 2013 WL 1157840 at * 1 (E.D. Pa. Mar. 21, 2013). As is

---

[2] Under Fed. R. Civ. P. 20, a plaintiff may join claims against defendants if the claims arise out of the same transaction, occurrence, or series of transactions or occurrences, and if any question of law or fact common to all these persons will arise in the action. Fed. R. Civ. P. 20(a)(1)(A)-(B). Fed. R. Civ. P. 21, in turn, permits a court -- on motion or on its own -- to "add or drop a party" and "also sever any claim against a party." Fed. R. Civ. P. 21.

"[C]ourts maintain broad discretion concerning whether to permit joinder and may sever defendants based on an evaluation of whether joinder would comport with the principles of fundamental fairness, prejudice either side, or confuse and complicate the issues for the parties involved." *John Wiley & Sons, Inc. v. John Doe Nos. 1-22*, 2013 WL 1091315 at * 1 (S.D.N.Y. Mar. 15, 2013) (quotes and cite omitted).

alleged here, doc. 1, the *Bubble Gum* Doe defendants were members of a BitTorrent "swarm":

> The BitTorrent protocol operates as follows. The process begins with one user, the "seed" who makes the file available. *Liberty Media Holdings v. Bittorrent Swarm et al.*, 277 F.R.D. 672, 674 (S.D.Fla. 2011). The seed then creates a "torrent" file using the BitTorrent protocol that contains a roadmap to the IP addresses of other users who are sharing the file. *Id.* Other users, or "peers," then download the torrent file, which allows them to download from other peers who possess pieces of the file. *Id.* All of these peers are part of the same "swarm" because they are downloading pieces of the same file. *Liberty Media Holdings v. Swarm Sharing Hash File*, 821 F.Supp.2d 444, 448 (D.Mass. 2011). After downloading a piece of the file, each user automatically becomes a source for this piece. The various members of the swarm continue to exchange pieces with one another. *Id.* A swarm can exist for well over a year depending on the popularity of the file being exchanged. Finally, "once a peer has accumulated enough individual pieces of the file, the software allows the peer to reassemble the aggregate file." *Liberty Media Holdings*, 277 F.R.D. at 674. It is this exchanging of pieces of the file that are subsequently aggregated into the whole file that facilitates faster file sharing than if each user was required to share the entire file with other users.

*Id.* (cite omitted).

Copyright holders can, through geolocation software, discover each swarmer's Internet Protocol (IP) address (the numerical label assigned to a computer to enable it to connect to the internet) but not the "alleged infringers' identifying information such as their names, street addresses, telephone numbers or email addresses." *Id.* The software used "only

3

identifie[s] the alleged infringers by their IP addresses." *Id.* Hence, the copyright holder sues the swarmers[3] as "John Does" and seeks early discovery from the court[4] (*i.e.*, prior to an Answer and Fed. R. Civ. P. 26(f) conference) so it can subpoena their identifying information from Internet Service Providers (ISP's).[5] *Id.* Alleging a *prima facie* case, doc. 1; *see also* doc. 1-2 (copy of its copyright registration), contending that a swarm as described above operated here, doc. 4-1 at 9-13, and invoking Fed. R. Civ. P. 45, that is what Voltage seeks here. Doc. 4; *see also* doc. 4-1 at 6-7.

## II. ANALYSIS

Lawsuits like this involve "technology [that] has outpaced the ability of the courts to deal with it." *Bait Productions Pty Ltd. v. Does 1-73*, 2013 WL 450638 at * 1 (M.D. Fla. Feb. 6, 2013). In many similar

---

[3] The *Bubble Gum* plaintiff alleged that the defendants, without the plaintiff's authorization, intentionally downloaded a torrent file particular to the plaintiff's film, then "purposefully loaded the torrent file into the BitTorrent Protocol, entered a BitTorrent swarm particular to [p]laintiff's [film], and reproduced and distributed the [film] to numerous other peers in the swarm." *Bubble Gum*, 2012 WL 2953309 at * 2. That, in essence, is what is alleged here. Doc. 1.

[4] *See Vision Films, Inc. v. John Does 1-24*, 2013 WL 1163988 at * 2-3 (D. Del. Mar. 20, 2013) (analyzing early discovery, "good cause" and "reasonableness" standards, then granting early discovery in nearly identical lawsuit).

[5] An ISP provides access to the internet to its subscribers -- the person who has an agreement with the ISP to use Internet service.

4

cases litigation immediately arises over the Rule 20 joinder. That seems quite likely to occur here, where Voltage seeks to identify and hale before this Court 31 defendants. The risk that some of them will be improperly joined *and* be abused[6] is substantial enough to portend a case that can (from improper joinder) quickly disintegrate:

> Because it is common today for people to use routers to share one internet connection between multiple computers, the subscriber associated with the IP address may not necessarily be the alleged infringer and instead could be the subscriber, a member of his or her family, an employee, invitee, neighbor or interloper. Therefore, the assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time. Further, in the Complaint, Plaintiff concedes that IP addresses can change frequently due to their dynamic nature. As a result, the risk of "false positives" is high and can result in defendants maintaining a variety of "it wasn't me defenses." Thus, joinder would lead to cumbersome motion practice and, ultimately, mini-trials involving different testimony and evidence.

---

[6] *See Raw Films, Ltd. v. Does 1–32*, 2011 WL 6182025 at * 3 (E.D. Va. 2011) (*sua sponte* initiating Fed. R. Civ. P. 11 sanctions against plaintiff's counsel: "This course of conduct indicates that the plaintiffs have used the offices of the Court as an inexpensive means to gain the Doe defendants' personal information and coerce payment from them. The plaintiffs seemingly have no interest in actually litigating the cases, but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does. Whenever the suggestion of a ruling on the merits of the claims appears on the horizon, the plaintiffs drop the John Doe threatening to litigate the matter in order to avoid the actual cost of litigation and an actual decision on the merits."), cited in *Mick Haig Prods. E.K. v. Stone*, 687 F.3d 649, 652 n. 2 (5th Cir. July 12, 2012); *see also Vision Films*, 2013 WL 1163988 at * 5 ("With respect to misuse of information, some courts have noted that plaintiffs appear simply to be using the federal courts as an avenue to collect money.") (quotes and cite omitted).

*Bubble Gum*, 2012 WL 2953309 at * 4 (quote and cites omitted).

In *Bubble Gum*, "[t]he Court granted [the copyright plaintiff's similar discovery] request, subject to a *protective* order, and subpoenas were served on the ISPs." 2012 WL 2953309 at * 2 (emphasis added). That court did not say what the protective order encompassed, but the ISPs informed the *Bubble Gum* "Doe" defendants. *Id.* Evidently remaining anonymous and identifiable only by their IP addresses (that, then, must have been the protective order's reach), the *Bubble Gum* defendants then sought to sever/dismiss the claims against them for misjoinder *and* to quash the subpoenas served on their ISPs. 2012 WL 2953309 at * 1. That court granted severance to all but one defendant -- effectively ending 99% of that case at its starting gate. It did not quash the subpoenas because they had been issued from another court and thus it lacked authority to quash them. *Id.*

It did note, however, that "[c]ourts are in conflict over whether downloading and sharing a file using BitTorrent protocol constitutes the same transaction, occurrence, or series of transactions or occurrences. Some courts have found joinder proper. Other courts, however, have found misjoinder and severed all defendants except Doe One." *Bubble*

6

*Gum*, 2012 WL 2953309 at * 3 (footnote omitted); *see also Collins,* 2013 WL 1157840 at * 1 ("courts are divided as to whether allegations that John Doe defendants each copied a piece of the same copyrighted work via BitTorrent are sufficient to bring the claims within the ambit of Rule 20(a) where, as here, the defendants' acts of infringement are alleged to have occurred not close in time but over the course of weeks or months.").[7]

Myriad factual distinctions exist, as noted above, but the fact that misjoinder has been repeatedly found and that it *enables* litigation abuse informs *this* Court's decision whether to authorize the requested subpoenas. In that regard, Rule 45(c)(1) instructs plaintiffs like Voltage to "avoid imposing undue burden or expense on a person subject to the subpoena." Rule 45(c)(1). And the rules further require that all parties proceed in a cost-efficient manner. Fed. R. Civ. P. 1.

More importantly, the latest BitTorrent cases have shined

---

[7] Other courts have cited filing fee losses to the public, plus the fees' modest deterrent effect against mass-defendant clustering. *See, e.g., Zambezia Film (Pty) Ltd. v. Does 1-33*, 2013 WL 1181587 at * 1 (N.D. Ill. Mar. 20, 2013) (citing its misjoinder ruling in prior case involving the "inappropriate packaging of defendants, an approach that sought to proceed through payment of a single $350 filing fee, while separate suits against the 300 claimed infringers for their discrete infringements would have escalated that cost to $105,000."); *Third Degree Films, Inc. v. John Does 1-72*, 2013 WL 1164024 at * 8 (E.D. Mich. Mar. 18, 2013); *John Wiley & Sons, Inc. v. John Doe Nos. 1-22*, 2013 WL 1091315, *3 (S.D.N.Y. Mar. 15, 2013).

additional light on the potential for "shake-down" abuse of innocent "John Does" who cannot realistically be expected to meet the temporality requirement. They remind that a subscriber who merely receives notice of a subpoena from his ISP can be intimidated into paying a "nuisance-avoidance" settlements. That reality obligates this Court to tread cautiously here.[8]

Voltage, evidently aware of this, assures the Court that when it subpoenas the ISPs they "will be able to notify their subscribers that this information is being sought, and, if so notified, each [d]efendant will have the opportunity to raise any objections before this Court. Thus, to the extent that any [d]efendant wishes to object, he or she will be able to do so." Doc. 4-1 at 7. Of course, that does not prevent Voltage from naming those parties in this case. And it costs money to hire counsel, so it is easy to extract nuisance-level settlements from demand-lettered

---

[8] As the *Collins* court said, in granting severance relief to "Doe" defendants there:

> Finally, the Court shares the concern expressed by numerous other courts confronting similar BitTorrent lawsuits that permitting joinder increases the potential for coercive settlements with innocent defendants seeking to avoid the embarrassment of having their names publicly associated with allegations of illegally downloading pornography. *See, e.g., Next Phase Distribution, Inc. v. Does 1–27*, 284 F.R.D. 165, 170 (S.D.N.Y.2012) (declining to "facilitate such coercive settlements by casting such an unnecessarily wide net").

*Collins*, 2013 WL 1157840 at * 3; *accord Vision Films*, 2013 WL 1163988 at * 5.

defendants *without ever* naming them, and without any of them ever appearing here to defend against unjust joinder or worse.

Moreover, the temporality factor here falls within the same general range of cases where judges have granted severance relief. Quoting from "*The Case Against Combating BitTorrent Piracy Through Mass John Doe Copyright Infringement Lawsuits*," 111 Mich. L. Rev. 283, 292-93 (Nov 2012), the *Zambezia Film* court warned that

> When considering whether John Does have been properly joined, judges should require plaintiffs to plead facts sufficient to show that the defendants were not only part of the same swarm, but that they were part of the same swarm *at the same time as one another*. If plaintiffs fail to satisfy this standard, expedited discovery should be denied and the improperly joined defendants should be severed from the action. Generally, this means that a plaintiff would be unable to join every member of a swarm that exists for a protracted period of time. Rather, the plaintiff would have to show that all the defendants downloaded the copyrighted work over a short enough period of time to support a probable inference that all the defendants were present in the swarm at the same time. Such a time period would usually span *hours rather than days or months*.

*Zambezia Film*, 2013 WL 1181587 at * 2. In that case the court directed plaintiff's counsel "to identify those Doe defendants who could properly be joined under Rule 20(a)(2) in the terms specified in the above-quoted excerpt. This Court will then proceed to dismiss without prejudice all Doe defendants who are not properly subject to such joinder, and the

9

actions will proceed solely against the nondismissed Does." *Id.*; *see also John Wiley & Sons*, 2013 WL 1091315 at * 4 ("In the cases at bar, Wiley alleges that each of the various defendants engaged in infringing conduct on only one of several days at issue. The differing dates and times of each Defendant's alleged sharing do not allow for an inference that the Defendants were acting in concert because they did not all share the infringed works with one another.") (quotes and cite omitted).

Here the attachment to Voltage's complaint shows that the 31 Does are alleged to have "swarmed" from October 22, 2012 through January 10, 2013. Doc. 1-1. Using a tracking agent, Crystal Bay Corporation (CBC), doc. 4-1 at 10, Voltage says it tracked down each Doe at the time and date the film's file was distributed by the user, plus the IP address assigned to each user at the time of the infringement, the video files metadata (in some cases) showing its title and file size). *Id.* at 14. CBC then created evidence logs for each "Doe" user. CBC determined that each Doe used the ISP's listed in doc. 1-1, together with other ISPs, to gain access to the internet and swarm-distribute Voltage's film. *Id.* at 15. It cites various assurance measures that it followed to assure accuracy. *Id.* at 14-16.

Voltage's own exhibit shows that it would join the instant defendants together because they swarmed over some *four months.* The Court finds persuasive the *Zambezia Film* court's tighter "Contemporaneous Swarm Requirement," as explained in the above-cited law review Note, 111 Mich. L. Rev. at 293. The Note beckons one to

> imagine a swarm developed around a file seeded by A. On Day 1, B, C, and D enter that swarm with A and help each other acquire the file by exchanging pieces of the file with one another. Their exchange can fairly be called the same "series of transactions" for purposes of Rule 20. Now, after the exchange, assume all four stay plugged into the swarm through Day 2, uploading pieces of the file to any other users who enter into the swarm. On Day 3, B, C, and D disconnect. The next day E, F, and G enter the swarm with A. Since the swarm develops around the file, E, F, and G are part of the same swarm that A, B, and C were in. However, now the file exchange is occurring between A, E, F, and G. By contrast, B, C, and D have no involvement with the second exchange because they left the swarm. Given that B, C, and D were not and could not be sources for E, F, and G, the former group's acquisition of the file was a wholly separate series of transactions from the latter's. Instead, the only link between the parties is that they "used the same peer-to-peer network to copy and reproduce [[a plaintiff's] video[]," which has time and again been ruled insufficient to meet the requirements for joinder. So long as the plaintiffs cannot allege more, they fail to prove that the defendants engaged in closely related transactions.

*Id.* at 295 (footnotes omitted); *see also John Wiley & Sons*, 2013 WL 1091315 at * 4 (collecting temporality cases).

Within 14 days of the date this Order is served, Voltage shall further brief the Court on whether the joinder (hence, early discovery based on it) should not be denied based on that temporality standard:

> It is thus fair to require the plaintiff to bear the burden of demonstrating not just a possibility but a high probability that the defendants were engaged in the same transaction or occurrence.
>
> This requirement is not manifestly unreasonable and some complaints already allege such detailed facts. For example, the complaint in *Liberty Media Holdings, LLC v. Does 1-62* [2012 WL 628309 (S.D. Cal. Feb. 24, 2012)] listed, for each of the sixty-two defendants, the time and date that the alleged infringing activity occurred. According to that complaint, all of the alleged infringing activity occurred over a period of seven hours. Since members of a BitTorrent swarm will usually remain in a swarm for some time after they have completely downloaded the file, this persuasively demonstrates that all sixty-two John Does were physically present in that swarm at the same time, and thus that Doe 1 was a potential source for Does 2 through 62.

*Id.* at 297-98 (footnotes omitted).

The Court is mindful of Voltage's contention that ISP data is routinely purged by ISP's. Doc. 4-1 at 18. But it cannot overlook the sheer number of lawsuits, and the potential for abuse that they pack, flooding the federal courts.[9] And "a defendant who nevertheless decides

---

[9] *See* 111 MICH. L. REV. at 304 ("[S]ince an innocent John Doe is just as likely to pay up as a guilty one, the lawyers do not need to take much care in ensuring that the John Doe actually was engaged in infringing activity.") (quotes and cite omitted); *see also id.* ("strategy has been described as shoot first, and identify . . . targets later") (quotes and cite omitted).

to forge ahead in court will encounter additional hurdles, namely the 'significant case manageability' and logistical issues that mass joinder creates." 111 Mich. L. Rev. at 305; *see also id.* at 306 ("John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed."). It is difficult to imagine scores of defendants attending each deposition in this case, for example. Additional briefing is thus warranted here.[10]

**SO ORDERED,** this ___1st___ day of April, 2013.

*/s/ G.R. Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[10] Of course, nothing prevents Voltage from suing infringing defendants individually.